**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**
No. 95-50106
(Summary Calendar)

United States of America,

                    Plaintiff-Appellees,

versus

Paul Garfield Dumpson,

                    Defendant-Appellant.

_____

Appeal from the United States District Court
For the Western District of Texas
(93-CR-446)
_____

(October 19, 1995)

Before HIGGINBOTHAM, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

Defendant Paul Garfield Dumpson appeals his conviction on three counts of kidnapping a person under the age of eighteen within the special maritime and territorial jurisdiction of the United States, in violation of 18 U.S.C. § 1201(a)(2), and five counts of aggravated sexual abuse, in violation of 18 U.S.C. § 2241(a).  Finding no error, we affirm.

---

Local Rule 47.5.1 provides:  "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession."  Pursuant to that Rule, the Court has determined that this opinion should not be published.

This case involves the kidnapping and subsequent sexual assault of three minor females during a three-month period in 1993. All three offenses occurred on federal government property, at Fort Bliss, Texas. At time of the crimes, the young victims))Christy, Monica, and Crystal))were, respectively, sixteen, thirteen, and fifteen years of age.

The three incidents of kidnapping and sexual assault involved strikingly similar facts. In each instance, Dumpson approached the victim while driving an automobile; and the victim willingly agreed to get into the car with him.[1] At some point after Dumpson began driving, the victims became aware that he was transporting them to a location other than where they had requested to go. Each repeatedly asked to be let out of the car or to be taken to her desired destination. Ignoring their pleas, Dumpson drove the young girls to a remote tract of federal land in the desert, where he assaulted them and forced them to take part in various sexual acts.

A jury convicted Dumpson of three counts of kidnapping a minor for the purpose of committing aggravated sexual abuse and five counts of aggravated sexual abuse. The district court sentenced him to terms of 500 months on each count to run concurrently. Dumpson appeals his convictions alleging: (1) that the trial court improperly allowed the prosecution to use leading questions; (2)

---

[1] Both Christy and Crystal got into the car with Dumpson after he asked where they were going and offered to give them rides to their stated destinations. Monica apparently accompanied Dumpson after he asked her for directions and then offered her five dollars to get into the car and help him locate a certain street.

that the use of leading questions deprived him of his constitutional right to confront the witnesses; (3) that the evidence was insufficient to support the kidnapping convictions; and (4) that the district court erred in sentencing.

II

Dumpson contends that the trial court committed reversible error by failing to sustain his objections to the prosecutor's use of leading questions during Crystal's testimony.[2] Dumpson also argues that his conviction should be reversed because the prosecutor's extensive use of leading questions amounted to testifying for each of the three victims.

As to those questions to which Dumpson lodged timely objections, we review the district court's actions for abuse of discretion.[3] *United States v. Clinical Leasing Service, Inc.*, 982 F.2d 900, 905 (5th Cir. 1992). We review the remaining leading questions for plain error. *See* FED. R. CRIM. P. 52(b); *United States v. Olano*, ___U.S.___, ___, 113 S. Ct. 1770, 1776, 123 L. Ed. 2d 508 (1993); *United States v. Steen*, 55 F.3d 1022, 1033 (5th Cir.

---

For example, the trial court overruled Dumpson's objection to the following line of questioning:

Q:  Where did he put the knife?
A:  I just saw him put -- I am not really sure.  I think he put it in the pocket or --
Q:  Behind him somewhere?
A:  Behind him somewhere.  Yes.
Q:  Then he had both hands free?
A:  Yes.

The record reflects that Dumpson did not make a continuing objection to the prosecutor's use of leading questions, but lodged only three objections during Crystal's direct testimony, one of which the court sustained.

-3-

1995).

A

The use of leading questions during direct examination of a witness is restricted to instances where it is "necessary" to develop the testimony. FED. R. EVID. 611(c). Appellate courts traditionally have granted great deference to trial courts' rulings on the use of leading questions pursuant to Rule 611(c). *Stine v. Marathon Oil Co.*, 976 F.2d 254, 266 (5th Cir. 1992). We have found the use of leading questions to be "necessary" in eliciting testimony from a child witness. *See Rotolo v. U.S.*, 404 F.2d 316, 317 (5th Cir. 1968) (permitting leading questions with a fifteen-year-old witness); *see also* FED. R. EVID. 611(c), Advisory Committee's note (recognizing that child witnesses represent a traditional exception to the general rule that leading questions are undesirable). Other courts have also recognized this exception, especially in sex abuse cases. *See, e.g., United States v. Longie*, 984 F.2d 955, 958-59 (8th Cir. 1993) (finding leading questions appropriate to elicit testimony from twelve-year-old sex abuse victim); *United States v. Tome*, 3 F.3d 342, 352 (10th Cir. 1993) ("This circuit has long recognized the necessity of using leading questions to elicit testimony from child sex abuse victims."), *rev'd on other grounds*, ___U.S.___, 115 S. Ct. 696, 130 L. Ed. 2d 574 (1995). Dumpson, however, argues that the use of leading questions was not "necessary" under the circumstances of

this case.[4]

The record reflects that the judge and jury initially had difficulty hearing Crystal's testimony because she was extremely soft-spoken.[5] Moreover, Crystal was highly upset and uncomfortable throughout much of her testimony, during which she was required to respond to explicit questions concerning a traumatic incident of sexual assault.[6] Under the circumstances, we conclude that the district court acted well within its discretion in allowing the prosecutor to use leading questions as necessary to develop the young victim's testimony. *See Rotolo*, 404 F.2d at 317 (allowing leading questions to develop testimony of nervous and upset young witness); *see also Tome*, 3 F.3d at 353 (allowing leading questions to develop testimony of young sex abuse victim who lost her composure and became reluctant to discuss the abuse incidents).

---

In particular, Dumpson argues that this case is distinguishable because Crystal's age))sixteen at the time of trial))did not necessitate the use of leading questions. Other courts, however, have upheld the use of leading questions in cases involving victims of similar ages. *See, e.g., United States v. Rossbach*, 701 F.2d 713, 718 (8th Cir. 1983) (upholding use of leading questions with rape and assault victims aged fifteen and seventeen), *cert. denied*, 498 U.S. 827, 111 S. Ct. 83, 112 L. Ed. 2d 56 (1990). Although age is an important criterion in determining whether the use of leading questions is appropriate, other circumstances should also be taken into consideration. *See, e.g., United States v. Castro-Romero*, 964 F.2d 942, 944 (9th Cir. 1992) (considering both age of victim and nature of testimony regarding sexual abuse).

The district court was also experiencing acoustical problems with the courtroom microphone. The trial judge took the sound problems into consideration in denying Dumpson's first two objections to the leading questions. Dumpson's third objection was lodged after actions had been taken to solve the acoustical problems, and the judge sustained this objection, noting that the microphone was "in better shape."

The questioning was halted on at least two occasions to allow Crystal to stop crying and regain her composure.

B

Dumpson also claims that the convictions should be overturned because the prosecutor essentially testified for the victims. Because Dumpson failed to object at trial, we reverse only if the excessive use of leading questions amounted to "clear" or "obvious" error which "affect[ed] substantial rights." *Olano*, ___U.S. at ___, 113 S. Ct. at 1777-78. We correct a forfeited error only under exceptional and limited circumstances. *See Olano*, ___U.S. at ___, 113 S. Ct. at 1779 ("The Court of Appeals should correct a plain forfeited error affecting substantial rights if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.") (internal citation and quotations omitted). Dumpson's claim fails to meet this standard. Because the prosecutor's extensive use of leading questions was at least arguably permissible under the well-recognized exception for questions necessary to develop the testimony of child witnesses, we find no "clear" or "obvious" error. Moreover, there was overwhelming evidence presented at trial that Dumpson committed the sexual offenses, and he does not challenge its sufficiency on appeal.[7] Accordingly, we find that the prosecutor's use of leading questions could not have seriously affected the fairness or integrity of Dumpson's trial.

III

Dumpson also contends that the excessive use of leading

---

Dumpson's challenge to the sufficiency of the evidence on the kidnapping charges is based solely on the fact that the victims initially agreed willingly to accompany him.

questions during the victims' testimony violated his rights under the Confrontation Clause. We find no merit to this claim. "The Confrontation Clause of the Sixth Amendment gives the accused the right 'to be confronted with the witnesses against him.' This has long been read as securing an adequate opportunity to cross-examine adverse witnesses." *United States v. Owens*, 484 U.S. 554, 557, 108 S. Ct. 838, 841, 98 L. Ed. 2d 951 (1988). In this case, all three victims were physically present on the witness stand and available for cross-examination. The record reflects that Dumpson exercised his right under the Confrontation Clause by extensively cross-examining all three victims.[8] *See Pennsylvania v. Ritchie*, 480 U.S. 39, 51, 107 S. Ct. 989, 998, 94 L. Ed. 2d 40 (1987) (holding that the Confrontation Clause ensures a criminal defendant's right to physically face and cross-examine those who testify against him).

IV

Dumpson next contends that the evidence was insufficient to support the kidnapping convictions.[9] The sole basis for his sufficiency argument is that all three victims willingly accompanied him, and that consent is a complete defense to

---

The record contains approximately 100 pages of defense counsel's cross-examination of the victims.

Dumpson was charged and convicted under federal law establishing the offense of kidnapping where an offender "unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person . . . within the special maritime and territorial jurisdiction of the United States." 18 U.S.C. § 1201(a)(2).

kidnapping.[10]

We must determine whether a rational trier of fact, when viewing the evidence in the light most favorable to the Government, could have found the essential elements of the offense beyond a reasonable doubt. *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982) (en banc), *aff'd*, 462 U.S. 356, 103 S. Ct. 2398, 76 L. Ed. 2d 638 (1983). As one necessary element, a federal kidnapping charge requires that the victim be an unconsenting person. *United States v. Davis*, 19 F.3d 166, 169 (5th Cir. 1994). In this case, it is undisputed that the victims initially consented to accompany Dumpson and willingly got into his car when he offered them a ride. However, the fact that a person originally accompanies someone by choice does not mean that a "kidnapping" cannot occur at a later stage. *See United States v. Peden*, 961 F.2d 517, 522 (5th Cir.) (concluding that evidence was sufficient to support federal kidnapping conviction where the victim agreed to accompany defendant to a restaurant and he instead took her to an isolated federal tract where he sexually assaulted her), *cert. denied*, ___U.S.___, 113 S. Ct. 392, 121 L. Ed. 2d 300 (1992); *United States v. McBryar*, 553 F.2d 433, 434 (5th Cir.) (upholding kidnapping conviction where defendant agreed to take victim to one destination, but then drove in opposite direction and refused her requests to be let out of the car), *cert. denied*, 434 U.S. 862, 98

---

Although Dumpson suggests in his reply brief that the evidence should be found insufficient because the jury could not hear Crystal's testimony, we decline to address this argument because it was not presented in his initial brief. *N.L.R.B. v. Cal-Maine Farms, Inc.*, 998 F.2d 1336, 1342 (5th Cir. 1993).

S. Ct. 191, 54 L. Ed. 2d 136 (1977); *United States v. Eagle Thunder*, 893 F.2d 950, 952 (8th Cir. 1990) (finding sufficient evidence to support kidnapping where victim initially consented to accompany defendant, but was later detained despite her requests to be taken home).

Each of the victims testified that at some point during the ensuing trip she asked to be let out of the car or taken to her intended destination, but that Dumpson refused. The victims' initial consent therefore becomes irrelevant and provides no defense to the kidnapping that occurred afterwards. We find the evidence was sufficient to support the kidnapping convictions.

V

Dumpson argues that the district court misapplied the Sentencing Guidelines in two respects. First, he contends that the four-level enhancement for "abduction," pursuant to U.S.S.G. § 2A3.1(b)(5), was improperly added to his offense level for the kidnapping charges. Second, Dumpson contends that the district court erred by applying the two-level enhancement for inflicting "serious bodily injury" upon two of the victims, pursuant to U.S.S.G. § 2A3.1(b)(4).[11]

We review Dumpson's sentence to determine whether the district court correctly applied the Sentencing Guidelines to factual findings that are not clearly erroneous. *United States v. Montoya-Ortiz*, 7 F.3d 1171, 1179 (5th Cir. 1993). A factual finding is not

---

Because it was raised for the first time in the reply brief, we will not consider Dumpson's argument that the district court erred by failing to apply the rule of lenity. *Cal-Maine Farms, Inc.*, 998 F.2d at 1342.

clearly erroneous if it is plausible in light of the record viewed in its entirety. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-76, 105 S. Ct. 1504, 1511-12, 84 L. Ed. 2d 518 (1985). Legal conclusions regarding the application of the Sentencing Guidelines are reviewed de novo. *Montoya-Ortiz*, 7 F.3d at 1179.

A

Dumpson contends that he did not "abduct" his victims within the meaning of the Sentencing Guidelines because they "willingly accompanied" him and because abduction requires the use of "force." He argues that the enhancement for "abduction" was not meant to apply to every "kidnapping." Dumpson relies on the definition of "abduction" found in the Guidelines:

> "Abducted" means that a victim was forced to accompany an offender to a different location. For example, a bank robber's forcing a bank teller from the bank into a getaway car would constitute an abduction.

U.S.S.G. § 1B1.1, note 1(a).[12]

There is no requirement, however, that the offender must use *physical* force in order to "abduct" a victim. The district court found that an abduction had occurred at the point where Dumpson refused each victims' requests to be let out of the car or taken to her destination. This finding is plausible in light of the entire record. *Anderson*, 470 U.S. at 573-76, 105 S. Ct. at 1511-12. The increased penalty for "abduction" is based on the rationale that the offender's ability to isolate the victim increases the

---

[12] To the extent that Dumpson relies on the example given in the definition, we note that these examples are "merely illustrative." U.S.S.G. § 1B1.1, comment. note 2.

likelihood that the victim will be harmed. *United States v. Saknikent*, 30 F.3d 1012, 1012 (8th Cir. 1994). Therefore, because the victims were forced against their will to accompany Dumpson into the desert, we find that the district court's application of a four-level increase for "abduction" was not error. *See id.* at 1012 (holding that the abduction adjustment only requires "force" necessary to overcome the particular victim's will); *see also United States v. Galloway*, 963 F.2d 1388, 1391-92 (10th Cir.) (holding that it did not constitute "cumulative punishment" to apply abduction enhancement to the crime of kidnapping for purposes of sexual abuse), *cert. denied*, ___U.S.___, 113 S. Ct. 418, 121 L. Ed. 2d 341 (1992).

B

Dumpson also contends that there was no evidence of "serious bodily injury" to satisfy the two-level increase to the base offense level for criminal sexual abuse as to two of the victims.[13] "Serious bodily injury" is defined as an "injury involving extreme physical pain or the impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1, comment. note 1(j).

There was medical testimony at trial that both victims had suffered bleeding and lacerations in the vaginal area. The two victims also testified to their psychological pain following the

---

The criminal conduct charge in Counts One through Three did not include a rape and there is no indication that the victim of those counts was injured.

-11-

sexual assault, including, in one case, an attempted suicide. The district court found that the victims had "suffered extreme physical pain at the time of the incident" and an impairment of their mental faculties, and that they "were emotionally traumatized in an extraordinary way." These findings are not clearly erroneous when viewed in light of the entire record, and we therefore hold that the district court did not err by imposing an enhancement for serious bodily injury. *See United States v. Reed*, 26 F.3d 523, 530-31 (5th Cir. 1994) (holding that enhancement for serious bodily injury may be imposed where the victim suffered post-traumatic stress syndrome but no corporal injury), *cert. denied*,___U.S.___, 115 S. Ct. 1116, 130 L. Ed. 2d 1080 (1995).

VI

For the foregoing reasons, we AFFIRM.